1  ALEXANDER B. CVITAN (SBN 81746), and
   E-mail: alc@rac-law.com
2  AARON G. LAWRENCE (SBN 258813), of
   E-mail: aaronl@rac-law.com
3  REICH, ADELL & CVITAN, A Professional Law Corporation
4  330 N. Brand Blvd., Suite 250
   Glendale, CA 91203
5  Telephone: (213) 386-3860; Facsimile: (213) 386-5583
6  Attorneys for Plaintiff

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9

10 CONSTRUCTION LABORERS              CASE NO.: 5:24-cv-02421 CAS-SP
   TRUST FUNDS FOR SOUTHERN
11 CALIFORNIA ADMINISTRATIVE          **MEMORANDUM OF POINTS AND**
   COMPANY, a Delaware limited        **AUTHORITIES IN SUPPORT OF**
12 liability company,                 **PLAINTIFF'S MOTION FOR**
                                      **JUDGMENT BY DEFAULT AGAINST**
13                                     **REMAINING DEFENDANTS**
                 Plaintiff,           **SOUTHWEST DIRECTIONAL**
14                                     **DRILLING, INC. AND RUBEN**
          v.                          **ARZATE**
15
16 SOUTHWEST DIRECTIONAL, a           [Fed.R.Civ.P. 55(b)(2)]
   California corporation also known as
17 and doing business as SOUTHWEST
   DIRECTIONAL INC.;                   DATE:    June 16, 2025
18 SOUTHWEST DIRECTIONAL              TIME:    10:00 a.m.
   DRILLING, INC., a California        JUDGE:  Christina A. Snyder
19 corporation; RUBEN ARZATE, an      CRTM:   8D, 8th Floor
   individual; AMERICAN               PLACE:  350 W. 1st Street
20 CONTRACTORS INDEMNITY                        Los Angeles, CA 90012
   COMPANY, a California
21 corporation,
22
23                 Defendants.
24
25
26
27
28

─────────────────────────────────────────────────────────
       MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT
577501.3

# TABLE OF CONTENTS

PAGE(S)

I.    INTRODUCTION ................................................................................. 1

II.   FACTS ESTABLISHED BY DEFAULT ............................................... 2

III.  RELIEF SOUGHT ............................................................................... 5

A.  SECOND CLAIM: PRINCIPAL Is Liable as Fiduciary for a Portion of the Unpaid Monthly Contributions ......................................................... 5

  1.  A Person Who Exercises Any Authority or Control Respecting Management or Disposition of Plan Assets Is an ERISA Fiduciary ............................ 5

  2.  PRINCIPAL Exercised Authority or Control, at a Minimum, as to Employee Wage Deductions for Contribution to the Vacation Fund ....................... 6

  3.  Such Amounts Became Vacation Fund Assets on the Earliest Date That They Could Have Been Segregated from Employer's General Assets .......................... 7

  4.  The Amounts Deducted from Employee Wages Could Reasonably Have Been Segregated from EMPLOYER's General Assets by the Date They Were Due ....................................................................................................... 8

  5.  PRINCIPAL Breached His Fiduciary Duties by Failing to Submit Vacation Fund Contributions When Due and Are Liable for the Resulting Losses to the Vacation Fund ....................................................................................... 9

B.  FIFTH CLAIM: Injunctive Relief is Appropriate to Compel PRINCIPAL and SW DRILLING to Cooperate With CLTF's Audit .................................... 10

  1.  SW DRILLING and PRINCIPAL were bound to Settlement Agreement and breached Settlement Agreement ............................................................ 10

  2.  An Order Compelling SW DRILLING and PRINCIPAL to Comply with their Obligation to Produce Records for Audit Is Necessary ............................ 10

  3.  SW DRILLING and PRINCIPAL are Liable for Attorney's Fees and Costs for Breach of the Settlement Agreement ................................................. 11

C.  Application of the Factors Set Forth in *Eitel v. McCool* Weighs in Favor of Entry of Judgment by Default ............................................................... 12

  1.  Possibility of Prejudice to Plaintiff ..................................................... 12

  2.  The Merits of Plaintiff's Substantive Claim ......................................... 13

  3.  The Sufficiency of the Complaint ........................................................ 13

  4.  The Sum of Money at Stake ................................................................. 14

  5.  Possibility of Dispute Regarding Material Facts .................................. 14

  6.  Whether the Default Was Due to Excusable Neglect ............................ 14

i

7.    Strong Public Policy Favoring Decision on the Merits ..................................15

IV.    SCOPE OF JUDGMENT ...................................................................................15

V.    CONCLUSION...................................................................................................16

CERTIFICATE OF COMPLIANCE...........................................................................17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

# **TABLE OF AUTHORITIES**

**Cases**

*Bd. of Trustees v. J.R.D. Mechanical*, 99 F.Supp.2d 1115 (C.D. Cal. 1999) ................ 9

*Bd. Trustees Airconditioning & Refrig. Ind. Health & Welfare Trust Fund v. J.R.D. Mechanical*, 99 F.Supp.2d 1115 (C.D. Cal. 1999) ........................................ 6

*Bos. v. Board of Trustees*, 795 F.3rd 1006 (9th Cir. 2015) ............................... 8

*Coleman vs. Nationwide Life Ins. Co.*, 969 F.2d 54 (4th Cir. 1992) ..................... 6

*Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) ......................................... 12

*FirsTier Bank, N.A. vs. Zeller*, 16 F.3d 907 (8th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994) ......................................................................... 6

*IT Corp. v. General American Life Insur. Co.*, 107 F.3d 1415 (9th Cir. 1997) ............ 6

*Kayes v. Pacific Lumber*, 51 F.3d 1449 (9th Cir. 1995) ................................. 6

*Kerns vs. Benefit Trust Life Ins. Co.*, 992 F.2d 214 (8th Cir. 1993) .................... 6

*Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) ..................................... 6

*Nelson v. EG & G Energy Measurements Group*, 37 F.3d 1384 (9th Cir. 1994) ......... 7

*Pegram v. Herdrich*, 530 U.S. 211 (2000) ............................................... 6

*Phelps v. C.T. Enterprises, Inc.*, 394 F.3d 213 (4th Cir. 2005) ......................... 9

*Prof. Helicopter Pilots Ass'n v. Denison*, 804 F.Supp. 1447 (M.D.Ala 1992) ............ 9

*Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491 (9th Cir. 1990) ......................................................................... 11

*Televideo Systems, Inc. v. Heidenthal*, 826 F.2d 915 (9th Cir. 1987) .................... 2

*United States v. Grizzle*, 933 F.2d 943 (11th Cir. 1991) ................................ 9


**Statutes**

29 U.S.C. § 1002(21)(A) ................................................................ 6

29 U.S.C. § 1002(3) .................................................................... 2

29 U.S.C. § 1002(37)(A) ................................................................ 2

29 U.S.C. § 1059(a)(1) ................................................................. 11

29 U.S.C. § 1104(a)(1) ................................................................. 9

29 U.S.C. § 1106(b)(1) ................................................................. 9

29 U.S.C. § 1109(a) .................................................................... 10

29 U.S.C. § 1145 ...................................................................... 10

29 U.S.C. § 186 ........................................................................ 2

29 U.S.C. §§ 1104, 1106, 1109 ........................................................ 7

**Regulations**

29 C.F.R. § 2510.3-102(a)(1) ........................................................... 7

29 C.F.R. § 2510.3-102(c) ............................................................. 8

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

# I.    <u>INTRODUCTION</u>

Plaintiff ("CLTF") is a fiduciary agent tasked with managing the collection of certain employee benefit plans ("Trust Funds"). CLTF brought this action on behalf of the Trust Funds to: (a) recover, from Defendant SOUTHWEST DIRECTIONAL, a California corporation also known as and doing business as SOUTHWEST DIRECTIONAL INC. ("EMPLOYER"), unpaid monthly employee fringe benefit contributions and related damages due to it by the plans, as well as pre-judgment and post-judgment interest on the delinquent sums, the higher of interest or liquidated damages, as well as attorney's fees and other costs (Claim 1); recover, from EMPLOYER and its principal and owner Defendant RUBEN ARZATE ("PRINCIPAL"), damages for breach of fiduciary duties (Claim 2); (c) compel EMPLOYER to provide records for an audit to adjudicate if additional amounts are owed and to timely and fully pay its required monthly contributions (Claims 3 and 4); and (d) enforce a prior settlement agreement against EMPLOYER, its PRINCIPAL, and a related corporate entity that was also signatory to that settlement agreement, Defendant  SOUTHWEST DIRECTIONAL DRILLING, INC., a California corporation ("SW DRILLING") (Claim 5).

All claims against EMPLOYER have already been resolved, with the Court entering several judgment against the EMPLOYER on March 27, 2025. [ECF No. 21, 22.] What remains—and what CLTF seeks to address via this Motion—are the claims asserted against PRINCIPAL and SW DRILLING: PRINCIPAL's joint and several liability with EMPLOYER for the fiduciary breach (Claim 2); and the breach by PRINCIPAL and SW DRILLING of their obligation under the settlement agreement to provide CLTF with the records necessary to conduct an audit (Claim 5). PRINCIPAL AND SW DRILLING, having been duly served, but having failed to respond, CLTF hereby seeks default judgment against these remaining defendants on these remaining claims for the same reasons that judgment was already entered against EMPLOYER.

1

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

## II.    <u>FACTS ESTABLISHED BY DEFAULT</u>

Entry of default establishes as true a complaint's well-pleaded factual allegations, other than those related to damage calculation. <u>Televideo Systems, Inc. v. Heidenthal</u>, 826 F.2d 915, 917-18 (9th Cir. 1987). Thus, CLTF has established the following facts associated to this motion for default judgment:[1]

A.    [<u>CLTF; Trust Funds</u>] CLTF is administrator of, agent for collection for, fiduciary to—and brings this action on behalf of—the Trust Funds listed in the Complaint. Each Trust Fund is an express trust formed by written agreement, an employee benefit plan within the meaning of ERISA § 3(3) (29 U.S.C. § 1002(3)), and a multi-employer plan under § 3(37)(A) (29 U.S.C. § 1002(37)(A)). Each Trust Fund exists pursuant to ERISA and LMRA § 302 (29 U.S.C. § 186). [<u>Complaint</u> (ECF No. 1) ¶¶ 2-3. <u>See also</u> <u>ECF No. 14-4</u> ¶ 3.]

B.    [<u>EMPLOYER</u>] EMPLOYER is a corporation formed by its PRINCIPAL, Defendant RUBEN ARZATE and is organized and existing under and by virtue of the laws of the State of California as of August 8, 2017; and does business in California as a construction contractor in an industry affecting interstate commerce. [<u>Complaint</u> ¶ 4.]

C.    [<u>PRINCIPAL</u>] PRINCIPAL, Ruben Arzate, is an individual engaged in business as the president of EMPLOYER and SW DRILLING with his principal pace of business at the same location as EMPLOYER and SW DRILLING in the State of California as a construction contractor in an industry affecting interstate commerce. [<u>Complaint</u> ¶ 6.] Additionally, PRINCIPAL acts and acted on behalf of and in the interest of EMPLOYER and SW DRILLING in all aspects of labor relations and EMPLOYER'S dealings with CLTF and in determining which employees

---

[1] In addition to those well-pleaded facts established as true via the Complaint [ECF No. 1], cites to the concurrently-filed declaration of CLTF's Collections Supervisor, Yvonne Higa ("<u>Higa Supp. Decl.</u>"), Ms. Higa's prior declaration (filed on February 21, 2025 at ECF No. 14-4), and the <u>Lawrence Decl.</u> are provided for the calculation of damages, additional support for contractual requirements, and other facts.

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

EMPLOYER would report, number of hours which contributions would be reported as owing and amount and timing to be paid to Trust Funds. [Complaint ¶¶ 12-13.]

D.    [SW DRILLING] SW DRILLING is a California Corporation formed by PRINCIPAL and is organized and existed under and by the virtue of the laws of the State of California as of February 23, 2024 and does, or maybe engaged in business as a construction contractor in an industry affecting interstate commerce. [Complaint ¶ 5.]

E.    [EMPLOYER is Bound to Collective Bargaining and Trust Agreements ("Agreements")] EMPLOYER is, and at all relevant times was (including from at least December 7, 2017), signatory to and bound under written Collective Bargaining and Trust Agreements, including the Laborers' Horizontal Directional Drilling Agreement ("HDD Agreement") with the Southern California District Council of Laborers ("Union"), under which EMPLOYER became obligated and bound to all the terms and conditions of the various Trust Agreements that created each of the original Trust Funds ("Trust Agreements"). The aforementioned HDD Agreement and Trust Agreements are collectively designated as EMPLOYER's "Agreements." [Complaint ¶¶ 16-17. See also ECF No. 21, at p. 2.]

F.    [PRINCIPAL Acted as Fiduciary] The Agreements require that EMPLOYER deduct Monthly Contributions due to the Trust Funds from EMPLOYER's employees' weekly paychecks. These deductions are assets of the Trust Funds under 29 C.F.R. § 2510.3-102 "as of the earliest date … [which they] can reasonably be segregated from the employer's general assets." [Complaint ¶ 33.] PRINCIPAL formed both EMPLOYER and SW DRILLING, [Complaint ¶¶ 4-5, 11], is the majority shareholder of both, [Complaint, ¶ 10], and is responsible for running the day-to-day operations of both entities, including those decisions pertaining to the reporting and payment of contributions to the TRUST FUNDS, and he personally maintains control of those funds that should have been paid to the TRUST FUNDS.

[Complaint, ¶¶ 8-10; see also ¶¶ 12-14.] Along with EMPLOYER,[2] PRINCIPAL had discretionary authority or control over such segregable funds to pay the amounts that would be withheld for contribution to the Trust Funds, including the authority to write checks on the accounts in which such funds were held, but instead kept them for their own use. [See Complaint ¶¶ 31-32, 35-37; see also ¶¶ 9, 12-14.] This fiduciary responsibility extends, at a minimum, to the required Monthly Contributions to the Vacation Fund, contributions that PRINCIPAL retained for its own benefit, but that—under the Vacation Fund Trust Agreement (and unlike other *employer*-made contributions)—are made by the *employees* out of the employee wages (employers are responsible for remitting these employee payments). [Higa Supp. Decl. ¶ 10 (Vacation Fund contributions "shall be shall be treated and reported as a part of the compensation earned by the employee at the time the work to which the contributions pertain is performed … and shall be deemed to be, and shall be treated as, subject to withholding tax and social security and unemployment taxes as a part of the total compensation payable at the end of the individual employer's payroll period during which such work is performed or paid for, but the full per hour contribution shall be transmitted to the Fund.").] The delinquent Monthly Contributions that are owed to the Vacation Fund total $17,843.65. [Higa Supp. Decl. ¶ 10.]

     G.    [CLTF Obligated to Conduct Audits] The Agreement grants the Trust Funds specific authority to review the payroll and business records of employers to verify whether they have reported all hours worked by (or paid for) their employees who perform Covered Work, and whether they have paid the requisite amounts due. The Agreements further stipulate that employers must maintain records sufficient for the Trust Funds to verify proper Monthly Reporting and determine additional

---

[2] CLTF alleged that EMPLOYER shared this discretionary authority with PRINCIPAL and was also a fiduciary. [Complaint ¶¶ 36-37.] The Court has already found that EMPLOYER was a fiduciary and breached its fiduciary obligation. [See ECF No. 21, at p. 6-7.]

amounts due. The Trust Funds have delegated the authority to perform such audits to CLTF. [Complaint ¶ 23; see also ECF No. 14-4 ¶¶ 12-13.]

H.    [PRINCIPAL and SW DRILLING Are Bound to a 2024 Settlement Agreement] On or about September 2024, PRINCIPAL and SW DRILLING (along with Defendant EMPLOYER) entered into a settlement agreement with CLTF ("Settlement Agreement") with respect to the known amounts owed by EMPLOYER on Monthly Reports covering the time periods from January 2022 through July 2024. The Settlement Agreement also required EMPLOYER, PRINCIPAL, and SW DRILLING to comply with audits of EMPLOYER's and SW DRILING's records. The Court previously determined that EMPLOYER breached the Settlement Agreement by failing to cooperate with the audit requirement. [See ECF No. 21, at p. 2-3.] PRINCIPAL and SW DRILLING likewise breached the Settlement Agreement by failing to cooperate with the audit requirement. As a consequence of PRINCIPAL and SW DRILLING's failure to comply with the audit obligations, CLTF has been unable to ascertain the full amount of delinquent contributions and related damages that may be due beyond the known delinquency amount. [Complaint ¶ 55; see also Higa Supp. Decl. ¶ 8.]

I.    SW DRILLING and PRINCIPAL are Required to Pay Attorneys' Fees and Costs] PRINCIPAL and SW DRILLING agreed in the Settlement Agreement to pay attorney's fees and costs incurred in enforcing that agreement. [Complaint ¶ 59; see also Higa Supp. Decl. ¶ 8.]

## III.    RELIEF SOUGHT

A.    **SECOND CLAIM: PRINCIPAL Is Liable as Fiduciary for a Portion of the Unpaid Monthly Contributions**

1.    A Person Who Exercises Any Authority or Control Respecting Management or Disposition of Plan Assets Is an ERISA Fiduciary

A "person is a fiduciary [under ERISA] with respect to a[n employee benefit]

5

plan to the extent (i) he exercises any … authority or … control respecting management or … disposition of its assets …" 29 U.S.C. § 1002(21)(A). ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority … expanding the universe of persons subject to fiduciary duties and to damages under § 409(a)" of ERISA for breach of fiduciary duties. Mertens v. Hewitt Associates, 508 U.S. 248, 262 (1993). "[T]he statute does not describe fiduciaries simply as administrators of the plan, or managers or advisers, [but] instead … defines [a person] as a fiduciary only 'to the extent' that he acts in such a capacity in relation to a plan." Pegram v. Herdrich, 530 U.S. 211, 226 (2000). ERISA fiduciary status is not "an all or nothing concept.... [A] court must ask whether a person is a fiduciary with respect to the particular activity in question." Kerns vs. Benefit Trust Life Ins. Co., 992 F.2d 214, 217 (8th Cir. 1993); see also Coleman vs. Nationwide Life Ins. Co., 969 F.2d 54, 61 (4th Cir. 1992).

"Authority or control" over plan assets need not be discretionary. IT Corp. v. General American Life Insur. Co., 107 F.3d 1415, 1421 (9th Cir. 1997) ("Any control over disposition of plan money makes the person who has the control a fiduciary"); see also FirsTier Bank, N.A. vs. Zeller, 16 F.3d 907, 911 (8th Cir. 1994), cert. denied, 513 U.S. 871 (1994) (ERISA "imposes fiduciary duties only if one exercises discretionary authority or control over plan management, but imposes those duties whenever one deals with plan assets."). It is well established that a corporate officer may be a fiduciary, even with respect to actions taken as a corporate officer. Kayes v. Pacific Lumber, 51 F.3d 1449, 1459 (9th Cir. 1995); Bd. Trustees Airconditioning & Refrig. Ind. Health & Welfare Trust Fund v. J.R.D. Mechanical, 99 F.Supp.2d 1115, 1121 (C.D. Cal. 1999).

2. PRINCIPAL Exercised Authority or Control, at a Minimum, as to Employee Wage Deductions for Contribution to the Vacation Fund

It is established by default that PRINCIPAL had discretionary authority or

6

control over the segregable funds required to pay the amounts required to satisfy EMPLOYER's Monthly Contribution obligations. [See supra § II.F.] In particular— and at a minimum—this discretionary authority extended to those Contributions due to the Vacation Fund from employee paychecks—a component employee wages that PRINCIPAL withheld from employee paychecks but did not submit to the Vacation Fund. [See id.] PRINCIPAL instead commingled such funds with other assets, used those funds for purposes other than contributing to the Vacation Fund, failed to exercise requisite care, skill, prudence and diligence with respect to those funds, and dealt with those funds in the interest, or for the account, of a person or entity other than the Vacation Fund. [See id.] The delinquent Monthly Contributions that are owed to the Vacation Fund, and for which PRINCIPAL shares responsibility jointly and severally with EMPLOYER for the fiduciary breach,[3] total $17,843.65. [See id.]

### 3. Such Amounts Became Vacation Fund Assets on the Earliest Date That They Could Have Been Segregated from Employer's General Assets

"For purposes of … part[] … 4 of subtitle B of title I of ERISA[4] … the assets of [an employee benefit] plan include 'amounts … that a participant has withheld from his wages by an employer[] for contribution … to the plan, as of the earliest date on which such contributions … can reasonably be segregated from the employer's general assets.'" 29 C.F.R. § 2510.3-102(a)(1). See also Nelson v. EG & G Energy Measurements Group, 37 F.3d 1384, 1391 (9th Cir. 1994) (deductions from employee paychecks for contributions to savings plan "should have been considered plan assets at the time they could reasonably have been segregated").

---

[3] The Court has already determined that a fiduciary duty existed with respect to these Vacation Fund contributions and that EMPLOYER breached that fiduciary duty. [See ECF No. 21, at p. 12.]

[4] The fiduciary duties at issue in the present case are established by 29 U.S.C. §§ 1104, 1106, 1109 (codified provisions ERISA subtitle B, part 4).

7

Monthly Contributions to the Vacation Fund fall squarely within the scope of the Regulation. They are made by *employees*, even if submitted by their employers. [Higa Supp. Decl. ¶ 10.] They are withheld from employee pay and "shall be deemed to be, and shall be, a part of the wages due to the employees with respect to whose work such payments are made." [Id.] Further, they "shall be treated and reported as a part of the compensation earned by the employee at the time the work to which the contributions pertain is performed … and shall be deemed to be, and shall be treated as, subject to withholding tax and social security and unemployment taxes as a part of the total compensation payable at the end of the individual employer's payroll period during which such work is performed or paid for, but the full per hour contribution shall be transmitted to the Fund." [Id.][5]

### 4. The Amounts Deducted from Employee Wages Could Reasonably Have Been Segregated from EMPLOYER's General Assets by the Date They Were Due

Under the Agreements, employers agree to pay Monthly Contributions for Covered Work on the 15th day of the month following the month in which the work was performed. [See ECF No. 14-4 ¶ 6.] As a term of agreement, such a period can, and should, be presumed to be reasonable; thus the delinquent Monthly Contributions due to the Vacation Fund could reasonably have been segregated from EMPLOYER's general assets by the date due and became Vacation Fund assets on that date. At very least, the burden must shift to PRINCIPAL to prove otherwise.

The outer limit of what can be can be considered to be the date that contributions "can reasonably be segregated from the employer's general assets" is established as a matter of law. See 29 C.F.R. § 2510.3-102(c) ("[I]n no event shall the date determined [to be reasonable] occur later than 90 days from the date on which …

---

[5] Contra Bos. v. Board of Trustees, 795 F.3rd 1006 (9th Cir. 2015) (unpaid *employer* contributions are generally not regarded as plan assets).

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

such amounts would otherwise have been payable to the participant in cash []in the case of amounts withheld by an employer from a participant's wages[]."). The amount due to the Vacation Fund and sought in damages based on fiduciary breach was deducted from employee wages that have been (or at the time of delinquent payment had been) payable for over 90 days from the date of the issuance of the paycheck from which the deduction was made.

5. <u>PRINCIPAL Breached His Fiduciary Duties by Failing to Submit Vacation Fund Contributions When Due and Are Liable for the Resulting Losses to the Vacation Fund</u>

An ERISA fiduciary "shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—(A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan … and (D) in accordance with the documents and instruments governing the plan …" 29 U.S.C. § 1104(a)(1). A fiduciary must discharge such duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). A fiduciary "shall not … deal with the assets of the plan in his own interest or for his own account …" 29 U.S.C. § 1106(b)(1).

By retaining the amounts deducted from employee paychecks for its own benefit instead of remitting these amounts to the Vacation Fund, PRINCIPAL breached its fiduciary duties to the Vacation Fund. <u>Phelps v. C.T. Enterprises, Inc.</u>, 394 F.3d 213, 219, 221 (4th Cir. 2005); <u>United States v. Grizzle</u>, 933 F.2d 943, 947 (11th Cir. 1991); <u>Bd. of Trustees v. J.R.D. Mechanical</u>, 99 F.Supp.2d 1115, 1122 (C.D. Cal. 1999); <u>Prof. Helicopter Pilots Ass'n v. Denison</u>, 804 F.Supp. 1447, 1453-54 (M.D. Ala 1992).

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

As fiduciary, PRINCIPAL is liable for "any losses … resulting from each … breach." 29 U.S.C. § 1109(a). Here, the breaches are the failure to, as required by the Agreements and 29 U.S.C. § 1145, remit Vacation Fund assets (amounts deducted from employee pay) to the Vacation Fund—that is, at least those losses to the Trust Funds that are due to the Vacation Fund as documented by EMPLOYER's own Monthly Reports and payroll records. The amount of employee wages required to be contributed to the Vacation Fund, but instead retained by PRINCIPAL, is **$17,843.65**. [Higa Supp. Decl. ¶ 10.] Thus, notwithstanding that PRINCIPAL is not personally party to the applicable collective bargaining agreements and, therefore, not responsible for the bulk of the principal amount deemed to be due by EMPLOYER, PRINCIPAL bears liability for his fiduciary breach with respect to these **$17,843.65** in delinquent Vacation Fund contributions jointly and severally with EMPLOYER.

**B.** **FIFTH CLAIM: Injunctive Relief is Appropriate to Compel PRINCIPAL and SW DRILLING to Cooperate With CLTF's Audit**

1. SW DRILLING and PRINCIPAL were bound to Settlement Agreement and breached Settlement Agreement

On or about September 2024, PRINCIPAL and SW DRILLING (along with Defendant EMPLOYER) entered into a Settlement Agreement with CLTF. The Settlement Agreement also required EMPLOYER, PRINCIPAL, and SW DRILLING to comply with audits of EMPLOYER's and SW DRILLING's records. [Complaint ¶¶ 55. See also Higa Supp. Decl. ¶ 8 [See supra § II.H.]

2. An Order Compelling SW DRILLING and PRINCIPAL to Comply with their Obligation to Produce Records for Audit Is Necessary

The Settlement Agreement required SW DRILLING and PRINCIPAL (and its co-Defendant EMPLOYER) to comply with CLTF's audit. [See supra § II.H.]  CLTF is entitled to enforce these provisions. Central States, 472 U.S. at 578-79. "ERISA

10

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries, and that trustees will take steps to identify all participants and beneficiaries, so that the trustees can make them aware of their status and rights under the trust's terms." Id. at 571-72. The right to audit does not depend on the existence of a known claim for delinquent contributions or benefits. Central States, 472 U.S. at 567-68, 579-81 (deferring to plan trustees' discretion as to the scope of, and documents required for, an audit). See also Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp., 920 F.2d 1491, 1495 (9th Cir. 1990) (reversing district court refusal to compel audit). PRINCIPAL has an obligation under both ERISA (29 U.S.C. § 1059(a)(1)) and the Agreements [Supra § II.H] to maintain records sufficient for the Trust Funds to make such determinations. The documents sought by CLTF to finish its audit are identified at Higa Supp. Decl. ¶9; See also ECF No. 14-4 ¶¶ 12-13.

3. SW DRILLING and PRINCIPAL are Liable for Attorney's Fees and Costs for Breach of the Settlement Agreement

As a consequence of SW DRILLING and PRINCIPAL's default, pursuant to Local Rule 55-3, attorney's fees are due as follows:

- Against PRINCIPAL in the amount of **$1,670.62** ($1,200.00, plus 6% of the total amount due over $10,000); and

- Against SW DRILLING in the minimum amount of $250.00.

Federal Rule 54(d)(1) also entitles CLTF to costs in the amount of **$118.88** against PRINCIPAL and **$290.38** against SW DRILLING for cost of service of the complaint on these defendants. [Lawrence Decl. ¶ 7.] Thus, the total damages due from each Defendant are as follows:

///

///

///

| Claim for Relief | PRINCIPAL's Liability | SW DRILLING's Liability |
|---|---|---|
| **1. Fiduciary Breach** | $17,843.65 | N/A |
| **5. Breach of Settlement** | (Injunctive Relief Requested) | (Injunctive Relief Requested) |
| **Attorney Fees and Costs** | $1,670.62 (fees) <br> $118.88 (costs) | $250.00 (fees) <br> $290.38 (costs) |
| **Total:** | $19,633.15 | $540.38 |

## C.    Application of the Factors Set Forth in *Eitel v. McCool* Weighs in Favor of Entry of Judgment by Default

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (Eitel).

### 1.  Possibility of Prejudice to Plaintiff

The Trust Funds are multiemployer employee benefit funds. [See supra § II.A.] They provide health insurance, pensions, and other fringe benefits to the employees of employers bound by the Agreements. [ECF No. 14-4 ¶ 5.] PRINCIPAL and SW DRILLING's default has established—and this motion has documented—that

PRINCIPAL and SW DRILLING were, are, and continue to be, delinquent in its obligations to the Trust Funds and thus in breach of the terms of the Settlement Agreement, and PRINCIPAL is additionally liable as a result of his fiduciary breach. [See supra §§ II.H (non-compliant with audit obligations); § II.F (fiduciary breach).] The breach of their audit obligations under the Settlement Agreement have left CLTF unable to ascertain the full amount of delinquent contributions and related damages that may be due. [See supra § II.H.] PRINCIPAL's fiduciary breach with respect to the required Vacation Fund contributions, [see supra § II.F] has also left that trust less than fully funded. [The Trust Funds also suffer losses on the use of the unpaid funds, obliging them to expend effort and resources to investigate and collect the delinquent amounts that deprive covered employees of certain credits to their fringe benefits. [See ECF No. 14-4 ¶¶ 22-25.] These harms extend beyond the Trust funds to their participants and/or beneficiaries, as employer delinquencies can result in denial of benefits to participants, up to and including the loss of health insurance and pension rights. [Id.] As such, the failure to enter the judgment sought would prejudice the Trust Funds.

### 2.  The Merits of Plaintiff's Substantive Claim

CLTF's claims for relief are for monetary damages and injunctive relief compelling PRINCIPAL and SW DRILLING to comply with its obligation to provide payroll and business records for a complete audit, as well as its duty to submit Monthly Reports and Contributions to the Trust Funds. The merits of these claims for relief are discussed in Sections III.A-III.I, supra.

### 3.  The Sufficiency of the Complaint

Fed. R. Civ. P., Rule 8 requires short and plainly-worded statements of jurisdiction and claim(s) for relief, as well as a demand for relief sought. CLTF's complaint meets these requirements. The basis of the Court's jurisdiction is set forth at

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

paragraph 2 of the complaint. Relevant facts are thereafter alleged and claims for relief stated. A demand for the relief sought is set forth in the claims for relief and the prayer for relief. Specific factual allegations of the complaint supporting CLTF's motion for default judgment are set forth in Section II, *supra*.

### 4.  The Sum of Money at Stake

"[ERISA] … requires that a benefit plan prevent participant employers from gaining even temporary use of assets to which the plan is entitled … a requirement that would certainly create a trustee responsibility for assuring full and prompt collection of contributions owed to the plan." Central States, 472 U.S. at 572-73. Even if the amount sought were considered large, CLTF submits that it is appropriate and reasonable to enter judgment for it, particularly in light of the purpose and dictates of ERISA. Entry of judgment in the amount owed is needed to assure the solvency of Trust Funds and safeguard their interests and those of their participants.

### 5.  Possibility of Dispute Regarding Material Facts

The Settlement Agreement breach by PRINCIPAL and SW DRILLING and fiduciary breach by PRINCIPAL are established by default and further documented by the declaration of Yvonne Higa filed in support of this motion. The monetary damages sought are based on EMPLOYER's own records. [See ECF No. 14-4 ¶ 21.]

### 6.  Whether the Default Was Due to Excusable Neglect

SW DRILLING and PRINCIPAL were served with the complaint. [ECF 15, 16, 24, 25.] SW DRILLING and PRINCIPAL—who have not sought relief from the entry of default—also received notice of this motion for default judgment, as recorded by the proofs of service, even though notice is not required. Moreover, PRINCIPAL, who owns and controls both EMPLOYER and SW DRILLING undertook no action to

oppose the prior motion for default judgment with respect to EMPLOYER. There is no evidence nor suggestion of excusable neglect.

### 7.  Strong Public Policy Favoring Decision on the Merits

The strong public policy concerns favoring decisions on the merits are not, and should not, be intractable. Here, there is a public policy concern in favor of access to the courts for employee benefit plans, such as the Trust Funds. Judgment enforcement is a critical tool to collect amounts owed to the Trust Funds and prevent future injury by delinquent employers, as well as to determine credit toward benefits that employee participants are entitled to based on their work or subsequent collection of amounts owed for their work. [See ECF No. 14-4 ¶¶ 22-24.]

## IV.  **SCOPE OF JUDGMENT**

The monthly obligation of an employer to contribute to the Trust Funds is ongoing. Consequently, the investigation and collection of delinquencies is also ongoing. Per its fiduciary obligations, CLTF audits employers to verify proper reporting and adjudicate whether additional undisclosed amounts are owed. [*See* ECF No. 14-4 ¶¶ 12-13.] CLTF also periodically reserves its rights with respect to any undisclosed amounts due for unaudited periods to firmly establish that it does not waive the Trust Funds' right to determine and collect Monthly Contributions due, but not disclosed, which would effectively relieve the employer of their duty to submit such Contributions and potentially permanently injure participants and beneficiaries by depriving them of their rights to health insurance, pensions, and vacation pay benefits. [Id.] Therefore, CLTF requests that judgment rendered in this case expressly conclude that the Trust Funds retain their rights to collect additional amounts later found to be owed for unaudited periods. SW DRILLING and EMPLOYER have not cooperated with any audit. [See ECF No. 14-4 ¶ 20.] As such, CLTF requests injunctive relief to compel SW DRILLING to produce its records for audit is for

January 2022 forward and PRINCIPAL to comply with obligations to submit to an audit by supplying requested documents.

## V.    **CONCLUSION**

CLTF respectfully requests that judgment be entered against PRINCIPAL for monetary damages on the second claim (fiduciary breach) in the amount of $17,843.65. On the fifth claim (breach of settlement), CLTF respectfully requests an order requiring SW DRILLING and PRINCIPAL to comply with their duties to produce record for audit. Finally, CLTF also requests that—in addition to the above relief—judgment against PRINCIPAL include an additional award of $1,670.62 in attorney's fees and $118.88 in costs, and that judgment against SW DRILLING include an award of $250.00 in attorney's fees and $290.38 in costs.

DATED: May 19, 2025                                   ALEXANDER B. CVITAN, and
                                                                         AARON G. LAWRENCE, of
                                                                         REICH, ADELL & CVITAN
                                                                         A Professional Law Corporation

                                                                         By: __/s/ Aaron G. Lawrence__
                                                                               Aaron G. Lawrence
                                                                               Attorneys for Plaintiff

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff certifies that this brief contains 4,787 words, which complies with the word limit of L.R. 11-6.1.


DATED: May 19, 2025                          By: ___/s/ Aaron G. Lawrence___
                                                          Aaron G. Lawrence
                                                          Attorneys for Plaintiff

MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT